IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| THE OTTER PROJECT and ENVIRONMENTAL DEFENSE CENTER,<br><br>   Plaintiffs,<br>   v.<br><br>KEN SALAZAR, ROWAN GOULD, UNITED STATES DEPARTMENT OF THE INTERIOR, UNITED STATES FISH & WILDLIFE SERVICE,<br><br>   Defendants,<br><br>CALIFORNIA SEA URCHIN COMMISSION, PETER HALMAY, HARRY LIQUORNIK, CALIFORNIA ABALONE ASSOCIATION, SONOMA COUNTY ABALONE NETWORK,<br><br>   Intervenor-Defendants. | No. C 09-4610 JW<br><br>**STIPULATED SETTLEMENT AGREEMENT AND [PROPOSED] ORDER OF DISMISSAL** |

Pursuant to Civil L.R. 7-12 this Stipulation is entered into by and between Plaintiffs, The Otter Project and Environmental Defense Center, Federal Defendants, Ken Salazar, Secretary of the United States Department of the Interior, Rowan Gould, Acting Director of the U.S. Fish &

Stipulated Settlement Agreement         1                    No. C 09-4610 JW

Wildlife Service, the United States Department of the Interior, and the United States Fish & Wildlife Service, and Intervenor-Defendants, California Sea Urchin Commission, Peter Halmay, Harry Liquornik, California Abalone Association, and Sonoma County Abalone Network. By and through their undersigned counsel, the parties do state as follows:

WHEREAS, on August 11, 1987, the Service issued a Final Rule establishing a program for translocation of southern sea otters under Public Law 99-625, 100 Stat. 3,500 (Nov. 7, 1986), 52 Fed. Reg. 29,754; 50 C.F.R. § 17.84(d);

WHEREAS, the 1987 Final Rule designated San Nicolas Island, and surrounding waters, as the translocation zone, with all other California waters and islands south of Point Conception designated as the management zone from which southern sea otters are to be removed and relocated either to the translocation zone or to the parent population;

WHEREAS, the 1987 Final Rule included five "Criteria for a Failed Translocation," and states that if any one of the five criteria are met, then the translocation would generally be considered to have failed, 50 C.F.R. § 17.84(d)(8);

WHEREAS, the 1987 Final Rule states that if, based on any of the five failure criteria the Service determines that the translocation program is a failure, then the Service will amend the rule to terminate the experimental population designation, following a full evaluation into the probable causes of the failure and publication of the results of the evaluation;

WHEREAS, in 2001, the Service issued a policy statement suspending the containment portion of the translocation program, after determining, pursuant to Section 7(a)(2) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536(a)(2), that containment was likely to jeopardize the continued existence of the species, 66 Fed. Reg. 6,649 (Jan. 22, 2001);

WHEREAS, under the National Environmental Policy Act ("NEPA"), the Service issued a draft supplemental environmental impact statement in 2005 containing a draft finding of failure, and identifying alternative 3C as its proposed action, under which it would terminate the translocation effort and withdraw the experimental population designation, while not removing any sea otters residing within either the translocation or management zones;

WHEREAS, the Plaintiffs filed the Complaint for Declaratory and Injunctive Relief in this action on September 30, 2009, and filed the First Amended Complaint for Declaratory and Injunctive Relief on December 23, 2009, alleging that the Service unreasonably delayed a decision on whether the southern sea otter translocation program has failed according to any of the five failure criteria at 50 C.F.R. § 17.84(d)(8), in violation of the Administrative Procedure Act, 5 U.S.C. § 555(b);

WHEREAS, this Court denied Federal Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint on May 5, 2010, holding that the First Amended Complaint alleged a failure to take required agency action, Doc. No. 42;

WHEREAS, the parties recognize that any further regulatory action by the Service is subject to the requirements of Section 7(a)(2) of the ESA if the proposed action may affect any species listed under that Act, and that the Service will conduct any appropriate consultation under Section 7(a)(2) and its implementing regulations.  Defendant-Intervenors believe that consultation is required under Section 7(a)(2) regarding the impact the proposed action may have on (1) the white abalone, the black abalone, and any other listed species that may be affected by the proposed action, and (2) the southern sea otter, including potential water quality impacts. Plaintiffs believe that it is premature to identify any specific effects that may be caused by the proposed action, and therefore believe that it is inappropriate to identify the scope of consultation that may be required; Plaintiffs do, however, agree that the Service must comply with any applicable requirements of the ESA during its rule-making process;

WHEREAS, the parties, through their authorized representatives, and without any admission or final adjudication of the issues of fact or law with respect to Plaintiffs' claims, have reached a settlement that they consider to be a just, fair, adequate, and equitable resolution of the disputes set forth in Plaintiffs' First Amended Complaint;

NOW, THEREFORE, IT IS STIPULATED BY AND BETWEEN THE PARTIES AS FOLLOWS;

1.  The Service agrees to complete the administrative process under 50 C.F.R. § 17.84(d)(8) no later than December 7, 2012.

2. As part of the administrative process, the Service agrees to take the following actions no later than September 1, 2011:

   a. Complete a revised Draft Supplemental Environmental Impact Statement ("DSEIS") on the Translocation Program, which shall include a draft determination as to whether the translocation program has failed, and submit a notice of availability of the DSEIS to the *Federal Register*;

   b. If the draft evaluation referred to in paragraph 2.a determines that the translocation is a failure, the Service also shall, by September 1, 2011, submit to the *Federal Register* the text of a proposed rule to terminate the program pursuant to 50 C.F.R. § 17.84(d)(8)(vi);

3. If, after consideration of all appropriate information, including public comment on the DSEIS and draft failure determination, the Service determines that the Translocation Program has failed, it shall complete a final supplemental EIS ("FSEIS"), associated NEPA Record of Decision ("ROD"), and a final failure determination and submit to the *Federal Register* a final determination on the proposed rule amending 50 C.F.R. § 17.84(d) by December 7, 2012.

4. If, after consideration of all appropriate information, including public comment on the DSEIS and draft failure determination, the Service determines that the Translocation Program has not failed, it shall complete an FSEIS and associated NEPA ROD, which shall include a final failure determination, and submit a notice of its final decision to the *Federal Register* by December 7, 2012.

5. The Order entering this Agreement may be modified by the Court upon good cause shown, consistent with the Federal Rules of Civil Procedure, by written stipulation between the parties filed with and approved by the Court, or upon written motion filed by one of the parties and granted by the Court. Any party seeking such a modification shall notify all parties of the requested modification and the reasons therefor. The parties will meet and confer (in-person not required) at the earliest possible time in a good-faith effort to resolve the claim

before pursuing relief from the Court. In the event a resolution is reached, the parties shall jointly move the Court to modify this Stipulated Settlement Agreement. If the parties are unable to agree, the parties reserve the right to seek the Court's intervention to enforce, alter, or modify the terms and conditions of this Stipulated Settlement Agreement.

6. In the event that Defendants fail to meet a deadline and have not sought to modify it pursuant to the procedures set forth in Paragraph 5, Plaintiffs' first remedy shall be a motion to enforce the terms of this Stipulated Settlement Agreement. This Stipulated Settlement Agreement shall not, in the first instance, be enforceable through a proceeding for contempt of court. Nor shall any Court-approved modifications to this Agreement be enforceable in the first instance through a proceeding for contempt. However, this Stipulated Settlement Agreement and Order of Dismissal does not affect the availability of remedies, including contempt, should Defendants fail to comply with Court orders that enforce, rather than modify, this Stipulated Settlement Agreement.

7. This Agreement only requires the Defendants to take actions specified in paragraphs 1-4, and does not limit the Service's authority with regard to the substantive outcome of any determinations.

8. No party shall use this Agreement or the terms herein as evidence of what does or does not constitute lawful action involving the Service's implementation of P.L. 99-625, the Endangered Species Act, the Marine Mammal Protection Act ("MMPA") or any other statute.

9. Upon entry of this Stipulated Settlement Agreement and Order of Dismissal, this action is dismissed with prejudice. Notwithstanding the dismissal of this action, however, the parties hereby stipulate and respectfully request that the Court retain jurisdiction to oversee compliance with the terms of this Agreement and to resolve any motions to modify such terms. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994).

10. Nothing in this Stipulated Settlement Agreement and Order of Dismissal shall preclude Plaintiffs or any other party from bringing claims challenging any final determination made pursuant to Paragraphs 1-4 herein. To bring such challenges, the party asserting the claims must file a new action.

11. The Service agrees that Plaintiffs are "prevailing parties" in this action and agrees to pay Plaintiffs' reasonable attorneys' fees and costs, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). The Service therefore agrees to settle all of Plaintiffs' claims for costs' and attorneys' fees in this matter for a total of $55,000.00. A check or electronic funds transfer shall be made payable in that amount to Plaintiffs' undersigned counsel, Environmental Defense Center, c/o Linda Krop, 906 Garden Street, Santa Barbara, CA 93101.

12. Plaintiffs agree to furnish the Service with the information necessary to effectuate payment pursuant to paragraph 12 and to hold the United States harmless for any loss caused by following this authorization and direction, should any loss occur. The Service shall submit all necessary paperwork for the processing of the attorneys' fee award to the relevant government account officials within thirty (30) days of receipt of the relevant information from the Plaintiffs.

13. Plaintiffs agree to accept payment of $55,000.00 in full satisfaction of any and all claims for attorneys' fees and costs of litigation to which Plaintiffs are entitled in this matter through and including the date of this Agreement. Plaintiffs agree that receipt of this payment from Defendants shall operate as a release of Plaintiffs' claims for attorneys' fees and costs in this matter, through and including the date of this Stipulated Settlement Agreement.

14. The parties agree that Plaintiffs reserve the right to seek additional fees and costs incurred subsequent to this Stipulated Settlement Agreement and Order arising from a need to enforce or defend against efforts to modify the underlying schedule outlined in paragraphs 1-4 or for any other continuation of this action. By this Stipulated Settlement Agreement, Defendants do not waive any right to

contest fees claimed by Plaintiffs or Plaintiffs' counsel, including the hourly rate, in any future litigation or continuation of the present action.  Further, this Agreement as to attorneys' fees and costs has no precedential value and shall not be used as evidence in any other attorneys' fees litigation.

15. Subject to the qualifications in paragraph 16, no provision of this Agreement shall be interpreted as, or constitute, a commitment or requirement that Defendants take action in contravention of the ESA, the MMPA, P.L. 99-625, the Administrative Procedure Act ("APA"), or any other law or regulation, either substantive or procedural.  Nothing in this Agreement shall be construed to limit or modify the discretion accorded to the Service by the ESA, MMPA, P.L. 99-625, the APA, or general principles of administrative law with respect to the procedures to be followed in making any determination required herein, or as to the substance of any final determination.

16. Nothing in this Agreement shall be interpreted as, or shall constitute, a requirement that the Defendants are obligated to pay any funds exceeding those available, or take any action in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other appropriations law.

17. The parties agree that this Agreement was negotiated in good faith and that this Agreement constitutes a settlement of claims that were denied and disputed by the parties.  By entering into this Agreement, the parties do not waive any claim or defense.

18. The undersigned representatives of each party certify that they are fully authorized by the party or parties they represent to agree to the Court's entry of the terms and conditions of this Agreement and do hereby agree to the terms herein.

19. The terms of this Agreement shall become effective upon entry of an order by the Court ratifying the Agreement.

Dated:  November 22, 2010          Respectfully Submitted,


    */s/ Brian Segee (by LEF, as authorized 11/22/10)*
Linda J. Krop (No. 118773)
Brian Segee (No. 200795)
Environmental Defense Center
906 Garden Street
Santa Barbara, CA 93101
Tel: (805) 963-1622
Fax: (805) 962-3152
Email: bsegee@edcnet.org, lkop@edcnet.org

Attorneys for Plaintiffs

IGNACIA S. MORENO, Asst. Attorney General
SETH M. BARSKY, Acting Section Chief


    */s/ Lawson E. Fite*
LAWSON E. FITE, Trial Attorney
Oregon Bar No. 055573
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7369
Washington, DC 20044-7369
Phone: (202) 305-0217
Fax: (202) 305-0275
Email: lawson.fite@usdoj.gov

Attorneys for Federal Defendants


*/s/ George J. Mannina, Jr. (by LEF, as authorized 11/22/10)*
George J. Mannina, Jr. (D.C. Bar No. 316943)
*Pro hac vice*
NOSSAMAN LLP
1666 K St., N.W., Suite 500
Washington, D.C. 20006
(202) 887-1400
Fax: (202) 466-3215

Email: gmannina@nossaman.com

Attorneys for Intervenor-Defendants

## **ORDER**

Pursuant to Stipulation, the terms and conditions of this Stipulated Settlement Agreement are hereby adopted as an enforceable ORDER of this Court, and this matter is hereby DISMISSED with prejudice.

IT IS SO ORDERED.  The Clerk shall close this file.

Dated: this 23rd day of  November , 2010.

*[signature: James Ware]*

UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE OTTER PROJECT, et al., | No. C 09-4610 JW |
| Plaintiffs, | **CERTIFICATE OF SERVICE** |
| v. | |
| KEN SALAZAR, et al., | |
| Defendants, | |
| CALIFORNIA SEA URCHIN COMMISSION, et al., | |
| Intervenor-Defendants. | |

I hereby certify that on November 22, 2010, I electronically filed the foregoing STIPULATED SETTLEMENT AGREEMENT AND [PROPOSED] ORDER OF DISMISSAL with the Clerk of the Court using the CM/ECF system, which will send notification of such to the attorneys of record.

*/s/ Lawson E. Fite*

LAWSON E. FITE